# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DAVID AND KAY SIEVERDING,

    Plaintiffs,

    v.

UNITED STATES DEPARTMENT OF
JUSTICE,

    Defendant.

Civil Action No. 09-562 (JDB)

## MEMORANDUM OPINION

Kay and David Sieverding, proceeding pro se, have sued the United States Department of

Justice alleging violations of the Privacy Act, as well as a number of other claims arising under

federal law. Currently before the Court is [8] the Department's motion to dismiss the

Sieverdings' complaint or in the alternative for summary judgment. Also pending are over a

dozen motions filed by the Sieverdings, as well as a motion for a protective order filed by the

Department. For the reasons detailed below, the Court will grant the Department's motion to

dismiss or in the alternative for summary judgment, and will deny all other pending motions,

other than a few procedural ones.

## BACKGROUND

The Sieverdings originally sued dozens of individuals and entities in 2002 for damages

arising out of a property dispute with their neighbors. See Sieverding v. Colo. Bar Ass'n, 2003

WL 22400218, at *1 (D. Colo. 2003). The district court, adopting a magistrate judge's

recommendation, dismissed the Sieverdings' complaint in full. See Sieverding v. Colo. Bar

Ass'n, 469 F.3d 1340, 1342-43 (10th Cir. 2006) ("Sieverding I").  In light of what it described as

the Sieverdings' "abusive litigation practices," the district court also imposed filing restrictions on

the Sieverdings.  See Sieverding v. Colo. Bar Ass'n, No. 02-cv-1950 (D. Colo. filed Oct. 11,

2002) [Docket Entry 788]; see also Sieverding I, 469 F.3d at 1343-45 (affirming filing

restrictions in part).  Ms. Sieverding apparently failed to comply with these filing restrictions,

and was arrested and jailed for civil contempt several times between 2005 and 2007.  See

Sieverding I, 469 F.3d at 1343; Sieverding v. Colo. Bar Ass'n, 244 Fed. Appx. 200, 205 (10th

Cir. 2007).  In this case, the Sieverdings allege dozens of Privacy Act and other violations

stemming from these arrests and incarcerations.[1]

### STANDARD OF REVIEW

All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a

short and plain statement of the claim showing that the pleader is entitled to relief,' in order to

'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47

(1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam).  Although "detailed

factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide

---

[1] This is by no means a comprehensive summary of the Sieverdings' extensive litigation
history.  Indeed, they have filed dozens of cases in federal court over the years, many frivolous or
even sanctionable.  See, e.g., Sieverding v. Colo. Bar Ass'n, 310 Fed. Appx. 229, 232 (10th Cir.
2009) ("This appeal is frivolous and represents another example of the Sieverdings' abusive
litigation practices."); Sieverding v. Colo. Bar Ass'n, 237 Fed. Appx. 355 (10th Cir. 2007)
(affirming sanctions against the Sieverdings of approximately $100,000); Sieverding v. Colo. Bar
Ass'n, 126 Fed. Appx. 457, 459 (10th Cir. 2005) (describing the "Herculean" feat of a magistrate
judge in "ma[king] as much sense as possible of [the Sieverdings'] numerous complaints and
amended complaints"); Sieverding v. Amer. Bar Ass'n, 466 F. Supp. 2d 224, 229 n.4 (D.D.C.
2006) ("Sieverding II") (imposing filing restrictions against the Sieverdings and declaring "[f]or
its part, this court's involvement in these frivolous cases is finished").

the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555-56. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); accord Atherton v. Dist. of Columbia Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009). A claim to relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. This amounts to a "two-pronged approach," under which a court first identifies the factual allegations entitled to an assumption of truth and then determines "whether they plausibly give rise to an entitlement to relief." Id. at 1950-51.

The notice pleading rules are not meant to impose a great burden on a plaintiff. See Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-13 (2002). When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor. See Leatherman v. Tarrant County Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bur. of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979). The plaintiff must be given every favorable inference that may be drawn from the allegations of fact. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). Moreover, "[c]ourts must construe pro se filings liberally." Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999). However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by

the facts set out in the complaint." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nor does the court accept "a legal conclusion couched as a factual allegation," or "naked assertions devoid of further factual enhancement." Iqbal, 129 S. Ct. at 1949-50 (internal quotation marks omitted); see also Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 n.4 (D.C. Cir. 2008) (the D.C. Circuit has "never accepted legal conclusions cast in the form of factual allegations" (internal quotation marks omitted)).

Along with its motion to dismiss the Sieverdings' complaint, the Department has moved in the alternative for summary judgment under Federal Rule of Civil Procedure 56. The Department has offered affidavits in support of its motion, and the Sieverdings have filed voluminous documentation to support their position. When, on a motion to dismiss, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); see also Yates v. Dist. of Columbia, 324 F.3d 724, 725, (D.C. Cir. 2003). To the extent the Sieverdings' allegations may be resolved on the evidentiary record before it, then, the Court will treat the government's motion as one for summary judgment.

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on

file, and any affidavits" that it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); see Celotex, 477 U.S. at 323.

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## ANALYSIS

As one district judge put it, the Sieverdings' pleadings are "verbose, prolix and virtually impossible to understand." Sieverding, 2003 WL 22400218, at *1. Nonetheless, the Court has identified numerous legal claims in both their original and amended complaint.[2] Many of these claims arise under the Privacy Act, and the Court will address those allegations first.[3] At the

---

[2] In general, "[o]nce an amended pleading is interposed, the original pleading no longer performs any function in the case." 6 Charles Allen Wright & Arthur R. Miller, et al., § 1476 (2d ed. 1990). But mindful of its "obligation to construe pro se filings liberally," Toolasprashad v. Bur. of Prisons, 286 F.3d 576, 583 (D.C. Cir. 2002), the Court will address claims made in the Sieverdings' original complaint, as well as those made in their amended complaint.

[3] In their voluminous filings, totaling well over a thousand pages, the Sieverdings have made quite literally dozens of "claims" -- often cryptic and incomprehensible -- found nowhere in
(continued...)

outset, however, the Court notes that David Sieverding lacks standing to sue on behalf of his wife.  See Fair Employment Council v. BMC Mktg. Corp., 28 F.3d 1268, 1277 (D.C. Cir. 1994) ("[O]rdinarily, a plaintiff 'must assert his own legal interests, rather than those of third parties.'" (quoting Gladstone, Realtors v. Bellwood, 441 U.S. 91, 100 (1979))).

## I.    Privacy Act Allegations

The Privacy Act, 5 U.S.C. § 552a et seq., "imposes a set of substantive obligations on agencies that maintain systems of records."  Skinner v. Dep't of Justice, 584 F.3d 1093, 1096 (D.C. Cir. 2009).  It also "'authorizes civil suits by individuals . . . whose Privacy Act rights are infringed.'"  Wilson v. Libby, 535 F.3d 697, 707 (D.C. Cir. 2008) (quoting Sussman v. United States Marshals Serv., 494 F.3d 1106, 1123 (D.C. Cir. 2007)).

Under the Act, every agency that maintains a system of records[4] may only keep "such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President."  5 U.S.C. § 552a(e)(1).  Agencies must also "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination."

---

[3](...continued)
either their complaint or their amended complaint.  See, e.g., Revised Mem. in Opp'n to Def.'s Mot. to Dismiss ("Revised Mem.") [Docket Entry 16] at 11-12 (RICO violation); id. at 26-27 (substantive Due Process violation).  The Court will not address these claims, which are not properly before it.

[4] The Act defines "system of records" as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual."  5 U.S.C. § 552a(a)(5).

Id. at § 552a(e)(5).  With limited exceptions, agencies are also prohibited from maintaining

records "describing how any individual exercises rights guaranteed by the First Amendment."  Id.

at § 552a(e)(7).

Individuals may petition agencies to amend records concerning the individual that are not

"accurate, relevant, timely, or complete."  Id. § 552a(d)(2).  If an agency refuses to amend an

individual's record, that person may sue in federal court for de novo consideration of whether

amendment is warranted.  See id. § 552a(g)(1)(A), (g)(2)(A).

The Privacy Act also restricts the disclosure of records.  Subject to various exceptions,

"[n]o agency shall disclose any record which is contained in a system of records by any means of

communication to any person, or to another agency," without the consent of the individual to

whom the record pertains.  Id. § 552a(b).  Also, for many disclosures, the agency must "keep an

accurate accounting of the date, nature, and purpose of each disclosure of a record . . . and the

name and address of the person or agency to whom the disclosure is made."  Id. § 552a(c)(1).

"The obligations created by the Act are not absolute, however.  The Act permits agencies

to exempt certain systems of records from some of its requirements."  Doe v. FBI, 936 F.2d

1346, 1351 (D.C. Cir. 1991).  Specifically, any agency "which performs as its principal function

any activity pertaining to the enforcement of criminal laws" may exempt from the Act's

maintenance and amendment requirements (among others) any system of records consisting of:

> (A) information compiled for the purpose of identifying individual criminal
> offenders and alleged offenders and consisting only of identifying data and
> notations of arrests, the nature and disposition of criminal charges, sentencing,
> confinement, release, and parole and probation status; (B) information compiled
> for the purpose of a criminal investigation, including reports of informants and
> investigators, and associated with an identifiable individual; or (C) reports
> identifiable to an individual compiled at any stage of the process of enforcement

of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a(j)(2).

Here, Kay Sieverding alleges a number of Privacy Act violations by the Federal Bureau of Investigation ("FBI"), the United States Marshals Service ("the Marshals" or "USMS"), and the Department of Justice ("the Department" or "DOJ").[5]  The Court takes the allegations of Ms. Sieverding against each defendant in turn.

A.    Allegations against the FBI

Ms. Sieverding alleges that the FBI violated 5 U.S.C. § 552a(e)(1) by maintaining a record concerning her arrest and imprisonment for civil contempt without statutory or executive authorization, and 5 U.S.C. § 552a(e)(5) by maintaining an inaccurate record about her.  See Compl. ¶¶ 7, 11; Am. Compl. ¶ 23.  In her view, the FBI also allegedly violated 5 U.S.C. § 552(d)(2)-(3) by failing to amend supposedly inaccurate records at her request, and by not explaining its failure.  See Compl. ¶¶ 10-11; Am. Compl. ¶ 52 & Exhibit 26 (FBI record).  The FBI, however, has exempted its record systems from the Privacy Act's maintenance, amendment, and explanation provisions.  See 28 C.F.R. § 16.96(g)-(h); Taylor v. DOJ, 257 F. Supp. 2d 101, 107 n.12 ("The FBI's investigations systems have also been exempted [from the Privacy Act] by the Department of Justice in regulations found at 28 C.F.R. § 16.96."); see also Doe v. FBI, 936 F.2d 1346, 1351 (D.C. Cir. 1991) ("[T]he FBI has promulgated a rule . . . that exempts its [Central Records System] to the fullest permissible extent from the requirements of [5 U.S.C. § 552a(d)]." (citing 28 C.F.R. § 16.96)).  And the record about which Ms. Sieverding complains,

_____

[5] The Department is the only defendant named in either Ms. Sieverding's original or amended complaint.  The FBI and USMS are each components of DOJ, however, and the Department has not contended that they are not proper parties to this lawsuit.

entitled an "FBI identification record," falls squarely within these exemptions. Am. Compl., Exhibit 26; see 28 C.F.R. § 16.31 (describing FBI identification records). Therefore, the FBI has not violated the Privacy Act, and the Court will grant summary judgment to defendant as to all such allegations.[6]

B.    Allegations against the USMS

1.    *Allegations that the USMS violated 5 U.S.C. § 552a(e)(5)*

Ms. Sieverding argues that the USMS keeps numerous inaccurate documents concerning her investigation, arrest, detention, and transportation in violation of 5 U.S.C. § 552a(e)(5)'s maintenance requirements. These contentions fail, however, as the allegedly inaccurate documents are all kept in systems of records that have been exempted from the Privacy Act's maintenance requirements: the Warrant Information System ("WIN"), the Prisoner Processing and Population Management System ("PPM"), and the Prisoner Transportation System ("PTS").[7]

The Department has submitted three affidavits to demonstrate that the documents Ms. Sieverding insists run afoul of the Privacy Act's maintenance requirements are all kept in at least

---

[6] Ms. Sieverding contends that the FBI's alleged Privacy Act violations are "part of a willful and wonton, and illegal, conspiracy to damage [her] reputation and cover-up of [sic] deprivations of [her] rights under law." Compl. ¶ 12. But an accusation that is a "mere conclusion[]," such as this one, is "not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1950. The Court will thus grant the Department's motion to dismiss this allegation.

[7] "The WIN contains warrant information, court records, [and] internal correspondence related to warrants, and other information concerning individuals for whom federal warrants have been issued." Def.'s Mot. to Dismiss or in the Alternative for Summ. J. ("Def.'s Mot.") [Docket Entry 8], at 21; Compl. ¶ 21 (same); see also Def.'s Mot., Decl. of William Bordley ("Bordley Decl."), ¶¶ 6-7. The PPM's records "are used by the USMS to capture the daily prisoner population totals in USMS facilities and to obtain an average daily prisoner population each month." Def.'s Mot. at 22; see Bordley Decl. at ¶¶ 6-7. And the PTS "contains court records and identifying data on each prisoner generated during the routine processing, housing, safekeeping, and disposition of prisoners in USMS custody." Def.'s Mot. at 23; see Bordley Decl. at ¶¶ 6-7.

one of these three record systems.  First, it supplies a declaration by William Bordley, Associate

General Counsel and Freedom of Information/Privacy Act Officer of the USMS.  <u>See</u> Bordley

Decl. at ¶ 1.  Mr. Bordley states that "[a]ll relevant records generated in response to the United

States District Court for the District of Colorado orders to the USMS for the arrest and detention

of Plaintiff are maintained in the USMS WIN and PPM/PTS systems of records."  <u>Id.</u> at ¶ 7.

Similarly, Paul Sever, a Supervisory Deputy United States Marshal in Madison, Wisconsin,

states that a bench warrant for Ms. Sieverding's arrest for failure to appear on September 25,

2006, "was entered into the USMS Warrant Information Network system of records and the

Federal Bureau of Investigation's National Crime Information Center . . . records."  Def.'s Mot.,

Decl. of Paul Sever, ¶ 4.  Finally, Stephen Wallisch, a Deputy United States Marshal for the

District of Colorado, asserts that records related to a May 10, 2007 arrest and subsequent transfer

of Ms. Sieverding from Wisconsin to Colorado "were prepared and maintained in the USMS

[WIN] and [PPM/PTS systems] of records."  Def.'s Mot., Decl. of Stephen Wallisch, ¶¶ 8-9.[8]

     The Marshals have exempted each of these three systems of records -- the WIN, the PPM,

and the PTS -- from the Privacy Act's maintenance requirements pursuant to 5 U.S.C. §

552a(j)(2).  <u>See</u> 28 C.F.R. § 16.101(a)(1) (the WIN); 28 C.F.R. § 16.101(q)(1) (the PPM); 28

C.F.R. § 16.101(o)(1) (the PTS).  And the courts have confirmed these exemptions.  <u>See</u> <u>Carbe v.</u>

---

[8] Ms. Sieverding objects that Mr. Wallisch's declaration, electronically filed with the Court, is unsigned.  <u>See</u> Revised Mem. at 2.  But there is nothing improper about this: "The electronic filing of a document that contains a sworn declaration, verification, certificate, statement, oath or affidavit certifies that the original signed document is in the possession of the attorney or pro se party responsible for the filing and that it is available for review upon request by a party or by the Court."  Local Rule 5.4(b)(5).  Here, moreover, the Department has offered into the record Mr. Wallisch's original signed declaration.  <u>See</u> Def.'s Mem. in Opp'n to Pl.'s Mot to Strike [Docket Entry 25], Decl. of Stephen Wallisch.

Bur. of Alcohol, Tobacco & Firearms, 2004 WL 2051359, at *12 (D.D.C. 2004) (the WIN);

Boyer v. United States Marshals Serv., No. 05-5190, 2006 U.S. App. LEXIS 7242, at *1-2 (D.C. Cir. Mar. 21, 2006) (the PPM); Anderson v. United States Marshals Serv., 943 F. Supp. 37, 39-40 (D.D.C. 1996) (the PTS).

Together, the Department's three declarations establish that all the records Ms. Sieverding contends were kept in violation of the Privacy Act's maintenance requirements are kept in systems of records that are exempt from these requirements. Accordingly, the Court will grant the USMS summary judgment on the allegations made by Ms. Sieverding in the following paragraphs of her pleadings: Compl. ¶¶ 31, 37, 45, 69, 75, 81-85, 92, 101, 154; Am. Compl. ¶ 36 & Exhibit 10 (USMS detainer form); ¶ 38 & Exhibit 12 ("Commitment To Another District" form from the Western District of Wisconsin); ¶ 40 & Exhibit 14 (USMS Subject Report for Ms. Sieverding); ¶ 41 & Exhibit 15 (February 2006 arrest warrant); ¶ 42 & Exhibit 16 (September 2006 arrest warrant); ¶ 43 & Exhibit 17 (USMS prisoner transportation form); ¶ 46 & Exhibit 20 (USMS individual custody and detention report); ¶ 47 & Exhibit 21 (WIN message).[9]

---

[9] Ms. Sieverding disputes that the warrants for her arrest were maintained in the WIN. See, e.g., Revised Mem. at 2-5, 10. She suggests that these arrest warrants -- attached as exhibits to her amended complaint -- could not have been entered into the WIN because they "are missing the required fields," contain handwritten markings, and were not "request[ed]" by federal law enforcement. Id.; see Am. Compl., Exhibits 15 & 16. Ms. Sieverding's wholly unsubstantiated assertions that the warrants were not -- and could not have been -- entered into and kept in the WIN are insufficient to survive summary judgment. See Byrd v. Envt'l Protection Agency, 174 F.3d 239, 248 n.8 (D.C. Cir. 1999) ("It is well settled that conclusory allegations unsupported by factual data will not create a triable issue of fact." (internal quotation marks omitted)).

Nonetheless, the Court will construe Ms. Sieverding's protests as a motion under Federal Rule of Civil Procedure 56(f), which permits discovery where a party opposing a motion for summary judgment "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition." See Revised Mem. at 2-3 (requesting discovery on this and other issues). To obtain discovery pursuant to Rule 56(f), however, a party must "show what

(continued...)

Ms. Sieverding next alleges that the USMS violated the Privacy Act's requirement that agencies may not maintain records "describing how any individual exercises rights guaranteed by the First Amendment." 5 U.S.C. § 552a(e)(7). Even assuming that the USMS maintains records describing how Ms. Sieverding exercises her First Amendment rights, however, these records are all exempt from 5 U.S.C. § 552a(e)(7)'s requirements.

The Privacy Act allows agencies to maintain records describing how individuals exercise their First Amendment rights if the records are "pertinent to and within the scope of an authorized law enforcement activity." Id. "Although the Privacy Act does not define 'law enforcement activity,' [the D.C. Circuit] ha[s] interpreted the phrase broadly." Maydak v. United States, 363 F.3d 512, 517 (D.C. Cir. 2004). Thus, to be excepted from 5 U.S.C. § 552a(e)(7), records need only be "'relevant to an authorized criminal investigation or to an authorized intelligence or administrative one.'" Nagel v. United States Dep't of Health, Educ. & Welfare, 725 F.2d 1438, 1441 n.3 (D.C. Cir. 1984) (quoting Jabara v. Webster, 691 F.2d 272, 280 (6th Cir. 1982)); see also J. Roderick MacArthur Found. v. FBI, 102 F.3d 600, 603 (D.C. Cir. 1996) (holding that valid law enforcement activities require neither an active investigation nor a

---

[9](...continued)

facts he intend[s] to discover that would create a triable issue and why he could not produce them in opposition to the motion." Byrd, 174 F.3d at 248 n.8. Ms. Sieverding has not done so. Rather, she has offered nothing more than "'conclusory assertion[s] without any supporting facts' to justify the proposition that the discovery sought" -- and Ms. Sieverding has not even identified what she seeks to discover -- "will produce the evidence required." Messina v. Krakower, 439 F.3d 755, 762 (D.C. Cir. 2006) (quoting Byrd, 174 F.3d at 248 n.8)). "The district court does not abuse its discretion when it denies a discovery request that would amount to nothing more than a fishing expedition." Bastin v. Fannie Mae, 104 F.3d 1392, 1396 (D.C. Cir. 1997). A fishing expedition is all that would result from discovery here, and the Court accordingly denies the motion.

"current law enforcement necessity").

All the records that allegedly describe Ms. Sieverding's First Amendment activities fall within this exception. A document entitled "Request for Assistance - Fugitive Investigation," for example, is plainly pertinent to authorized law enforcement activity, see Am. Compl. ¶ 28 & Exhibit 2, as is an email sent by the Marshals to the office of Tammy Baldwin -- Ms. Sieverding's congressional representative -- which contains "copies of arrest warrants and related court documents," see Am. Compl. ¶ 45 & Exhibit 19; see also Compl. ¶¶ 102, 113; Am. Compl., Exhibit 9 (email from representative Baldwin's office to USMS), Exhibit 23 (USMS emails discussing representative Baldwin's request for information regarding Ms. Sieverding). Accordingly, the Court will grant summary judgment as to Ms. Sieverding's claims that the USMS violated 5 U.S.C. § 552a(e)(7).[10]

3.    *Allegations that the USMS violated 5 U.S.C. § 552a(c)*

Ms. Sieverding next contends that the USMS violated the Privacy Act's requirement that agencies must generally "keep an accurate accounting of the date, nature, and purpose of each disclosure" of records, as well as "the name and address of the person or agency to whom the disclosure is made." 5 U.S.C. § 552a(c)(1)(A)-(B).

Contrary to Ms. Sieverding's belief, however, the Privacy Act does not require that disclosed records themselves contain "the date, nature, and purpose" of each disclosure. Rather,

_____

[10] The Court will also grant defendant's motion to dismiss Ms. Sieverding's allegations that the USMS violated 5 U.S.C. § 552a(e)(7) by maintaining records related to its "detention[], surveillance, and searching" of her. See Compl. ¶¶ 16-20. These claims, as alleged, fall within the Privacy Act's exception for valid law enforcement activity. Moreover, they are simply legal conclusions couched as factual allegations, and as such are "not entitled to the assumption of truth." See Iqbal, 129 S. Ct. at 1950.

the Act simply requires that the Marshals "keep an accurate accounting" of each disclosure. Thus, the Court will dismiss any claims that the Marshals violated § 552a(c) by failing to physically mark the date, nature, and purpose of any disclosure on the records being disclosed. See Compl. ¶¶ 32, 124-25, 128, 132-33.

Moreover, 5 U.S.C. § 552a(c) only requires agencies to keep accurate accountings of their disclosures of records; they need not account for conversations or personal visits. Accordingly, the Court will dismiss Ms. Sieverding's allegations that the Marshals violated 5 U.S.C. § 552a(c) by failing to record "the date, nature, and purpose" of their visits and conversations with individuals during their investigation of her. See Compl. ¶¶ 93, 128, 133, 138.

Finally, an individual may only sue for a violation of 5 U.S.C. § 552a(c) if the violation had "an adverse effect" on her. See 5 U.S.C. § 552a(g)(1)(D); Sussman, 494 F.3d at 1124. An individual suffers an "adverse effect" if she "satisfies the injury-in-fact and causation requirements of Article III standing." Doe v. Chao, 540 U.S. 614, 624 (2004). Here, Ms. Sieverding has not alleged that the Marshals' purported failure to keep an accurate accounting of their disclosures of her records caused her any "'concrete and particularized'" injury that can be "'fairly trace[d] to the challenged action.'" See North Carolina v. Envt'l Protection Agency, 587 F.3d 422, 425 (D.C. Cir. 2009) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). Ms. Sieverding thus has not alleged any "adverse effect" from the Marshals' supposed violations of 5 U.S.C. § 552a(c), and she cannot sue for any such violations. See 5 U.S.C. § 552a(g)(1)(D). Accordingly, the Court will grant defendant's motion to dismiss as to all claims brought pursuant to 5 U.S.C. § 552a(c). See Compl. ¶¶ 32, 93, 124-25, 128, 132-33, 138.

4.      *Other miscellaneous Privacy Act allegations*

Ms. Sieverding alleges that the Marshals committed three additional Privacy Act violations. First, she contends that the Marshals violated the Privacy Act's requirements that they "establish rules of conduct for persons involved in the . . . operation . . . of any system of records," and "establish appropriate . . . safeguards to . . . protect against any unanticipated threats . . . to [records'] security." 5 U.S.C. 552a(e)(9)-(10); see Compl. ¶ 107. But all Ms. Sieverding's complaint offers on this point is the assertion, without explanation, that the Marshals failed to comply with this statutory requirement. As no more than "'a formulaic recitation of the elements of a cause of action,'" this allegation cannot survive a motion to dismiss. See Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555).

Next, she argues that the USMS violated the Privacy Act by conducting a non-criminal investigation of her. See Am. Compl. ¶ 44 ("I believe this shows a violation of the Privacy Act because the USMS is confined to criminal matters."); Am. Compl., Exhibit 18 (USMS "Report of Investigation"). The Privacy Act does not, however, restrict the Marshals' investigative authority. And in any event, the Marshals' authority plainly extends to the non-criminal matter -- enforcement of a civil bench warrant -- noted in the USMS's Report of Investigation that Ms. Sieverding references. See 28 U.S.C. § 566(c) (USMS "shall execute all lawful writs, process, and orders issued under the authority of the United States, and shall command all necessary assistance to execute its duties").

Lastly, Ms. Sieverding alleges that the USMS violated the Privacy Act by unlawfully transmitting warrants -- to Ms. Sieverding's congresswoman, for example -- by mail, facsimile, or email. See Am. Compl. ¶ 37 & Exhibit 11 (warrant for Ms. Sieverding's arrest attached to

email); see also Compl. ¶¶ 30, 91.  The Marshals Service, she argues, is prohibited from "serving or publishing warrants that did not go thru [sic] WIN."  Compl. ¶ 22; see also Compl. ¶¶ 111-12, 117.  But neither the Privacy Act nor any other federal statute prohibits warrants from being transmitted except through the WIN.  Indeed, Ms. Sieverding's complaint provides no legal basis for this claim, offering only that "[t]he government would not have spent all the money they did developing WIN if use of WIN was optional."  Compl. ¶ 30.  That bald assertion is not enough to sustain her otherwise unsupported claim.

      C.     Allegations against DOJ

      Ms. Sieverding contends that DOJ violated the Privacy Act's maintenance requirements "as shown by the fact that their prosecutor showed up for an incarceration hearing [held in the Western District of Wisconsin] without an offense being listed on the docket report."  Compl. ¶ 60; see Am. Compl., Exhibit 3 (docket sheet for the Western District of Wisconsin).[11]  But Ms. Sieverding offers no explanation, and the Court can think of none, for how a prosecutor's appearance at "an incarceration hearing" could reflect a violation of the Privacy Act.  And to the extent that Ms. Sieverding contends that the absence of a criminal offense on the docket sheet is itself a Privacy Act violation, even Ms. Sieverding acknowledges that it was court staff, not DOJ, that created this document.  See Compl. ¶ 59 ("[T]he court clerk of the District of Western Wisconsin[] created a criminal docket that did not list an offense.").  Hence, no claim against DOJ could lie for that event.

---

[11] As noted above, the Privacy Act requires agencies to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination."  5 U.S.C. § 552a(e)(5).

Ms. Sieverding also insists that "DOJ is required to correct the records they created in the City of Verona[, Wisconsin]." Compl. ¶ 35; see 5 U.S.C. § 552(d)(2)(B) (agencies must amend records to the extent they are "not accurate, relevant, timely, or complete"). The records about which Ms. Sieverding complains, however, are "the records of the city," Compl. ¶ 35, and thus are not maintained in the Department's "system of records." See 5 U.S.C. § 552(a)(5) ("[T]he term system of records means a group of any records under the control of any agency . . . ."). DOJ, then, has no obligation under the Privacy Act to ensure that these records are accurate or complete.

Ms. Sieverding next alleges that "DOJ is required by The Privacy Act to collect [her and her husband's] information," as "there are government victim's programs in which [they] wish to participate." Compl. ¶ 205; see also Compl. ¶ 206. Ms. Sieverding appears to be referring to the Privacy Act's requirement that agencies must "collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs." 5 U.S.C. § 552a(e)(2); see Compl. ¶ 204 (citing § 552a(e)(2)). But Ms. Sieverding misapprehends the statute. Section 552a(e)(2) does not, as she apparently believes, require DOJ "to collect [her] information." Rather, it simply requires agencies, "when gathering information that may lead to an adverse determination about an individual, to obtain that information directly from the individual 'to the greatest extent practicable.'" Dong v. Smithsonian Inst., 125 F.3d 877, 878 (D.C. Cir. 1997) (quoting 5 U.S.C. § 552a(e)(2)); see also Waters v. Thornburgh, 888 F.2d 870, 872 (D.C. Cir. 1989). Ms. Sieverding's complaint does not allege that DOJ gathered any information that might lead to an adverse determination about her eligibility for federal

programs.  Nor does she contend that any such information collected was not obtained "to the greatest extent practicable directly from [her]."  Thus, Ms. Sieverding cannot sustain this claim.[12]

Finally, Ms. Sieverding contends that DOJ violated the Privacy Act by failing "to look for communications" concerning her incarceration that were sent from the United States District Court for the District of Colorado.  See Compl. ¶ 181; see also Compl. ¶ 174.  The Privacy Act does not, however, place an affirmative obligation on government agencies "to look for" communications or records.

 D.    Allegations not against federal agencies

Lastly, Ms. Sieverding alleges Privacy Act violations by entities that are not defendants to this action.  See Compl. ¶ 88 (United States District Court for the Western District of Wisconsin); ¶ 187 (Colorado Office of Attorney Regulation Counsel); ¶¶ 188-93 (District of Columbia Board of Professional Responsibility); ¶¶ 194-97 ("Minnesota Attorney Regulation Counsel"); Am. Compl. ¶ 48 & Exhibit 22 (Dane County Sheriff's Office).  Even assuming the Privacy Act applies to these non-party entities, the Court has no jurisdiction over them and hence will dismiss all allegations against them.

*    *    *    *    *

In sum, Ms. Sieverding cannot sustain any of her Privacy Act allegations.  Accordingly, then Court will dismiss or, where noted, grant summary judgment as to all such claims.

**II.    Non-Privacy Act Allegations**

Besides her allegations under the Privacy Act, Ms. Sieverding contends that the FBI,

_____

[12] 5 U.S.C. § 552a(e)(2) does not require "the sharing of [the Sieverdings'] Victim's Rights allegations with the FBI and DOJ when request[ed] so that [they] may be eligible for federal programs."  Compl. ¶ 206.

USMS, DOJ, and several other entities violated a number of other federal laws.

A.    <u>Allegations against the FBI</u>

Ms. Sieverding makes one non-Privacy Act allegation against the FBI. She states that in 2005 she was held in federal custody without being charged with a crime, and that "[t]he FBI has a statutory duty to report [this] imprisonment without charges to the Attorney General." Compl. ¶¶ 163-65.

It is true that allegations received by executive branch agencies "relating to violations of Federal criminal law involving Government officers and employees" must be reported to the Attorney General. 28 U.S.C. § 535(b). Even assuming that she has standing to pursue a private right of action under that statute, however, Ms. Sieverding's complaint does not adequately allege that government employees violated federal criminal law. Although she insists that the Marshals lacked the authority to arrest and jail her, <u>see</u> Compl. ¶¶ 151-56, an unauthorized search or seizure is not, without more, a violation of federal criminal law. Nor does simply asserting to the FBI that she was being held without charges, as she claims she and her husband did, <u>see Compl.</u> ¶¶ 163-64, state a claim for violation of federal criminal law. And Ms. Sieverding's contention that the Marshals "conspired" to deprive her of her constitutional rights, <u>see</u> Compl. ¶ 156 -- behavior that might constitute a federal crime, <u>see</u> 18 U.S.C. § 241 -- is wholly unsupported by factual allegations and thus need not be credited by the Court. <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949-50; <u>see also</u> <u>Tooley v. Napolitano</u>, 586 F.3d 1006, 1009-10 (D.C. Cir. 2009) (courts may dismiss "patently insubstantial claims").[13]

---

[13] Ms. Sieverding raises a similar claim against the Marshals, alleging that they "should have notified DOJ of [her] allegations that [a] warrant was invalid." Compl. ¶ 121. This

(continued...)

B.    Allegations against the USMS

Ms. Sieverding accuses the Marshals of "act[ing] to subvert the protections of" Federal Rule of Civil Procedure 45 by transporting her from Wisconsin to Colorado on May 31, 2007. Compl. ¶¶ 63-71. She apparently objects that she was taken to a hearing in violation of Rule 45's restrictions on subpoenas. But Ms. Sieverding was not transported pursuant to a subpoena. Rather, she was transferred pursuant to a "Commitment to Another District" order issued by the United States District Court for the Western District of Wisconsin. See Am. Compl., Exhibit 12. Accordingly, Rule 45's restrictions governing subpoenas are inapplicable. Ms. Sieverding also cannot sustain her related claim that, once she was released from federal custody in Colorado, the Marshals were required "to take some steps to make sure that [she] got home safely." Compl. ¶ 73. There is no law or regulation requiring the Marshals to take steps to ensure that individuals who have been released from their custody "g[e]t home safely."

Ms. Sieverding also contends that the Marshals "exceeded their statutory authority" by transporting her in chains to a hearing for a civil case "without a law enforcement purpose." Compl. ¶¶ 78-81. There is no statutory limit on the Marshals' authority to transport individuals in their custody, however. Nor is there, as Ms. Sieverding argues, any statutory requirement that the Marshals receive "written authorization" from DOJ before searching for an individual, see Compl. ¶¶ 116, 122, 129, 134, 137, or before "discuss[ing]" one individual with another, see

_____

[13](...continued)
allegation fails for the same reason: a Fourth Amendment violation is not, without more, a violation of federal criminal law.

-20-

Compl. ¶ 135.  The Court will dismiss all such claims.[14]

Ms. Sieverding next insists that the Marshals "should have acknowledged the illegality" of their failure to send a copy of an executed warrant either to her or to an (unidentified) court, and of their incarcerations of her.  Compl. ¶¶ 198-99; see also Compl. ¶¶ 34, 90; Am. Compl. ¶ 50 (making a similar allegation against DOJ).  But the Marshals are under no legal obligation to comment on any ongoing investigation or judicial proceeding, much less to "acknowledge[]" any allegedly improper behavior.

Ms. Sieverding also alleges that the Marshals violated Federal Rule of Criminal Procedure 4(c)(3)(A)'s requirement that an arresting officer who does not possess an arrest warrant must inform the arrestee "of the offense charged."  She insists that on February 7, 2006, the Marshals called her and "threatened [her] with arrest," but "refused to tell [her] the offense charged."  Compl. ¶¶ 86-87.  Rule 4(c)(3), however, by its terms, only applies "[u]pon arrest."  Thus, Rule 4 is inapplicable to the conduct Ms. Sieverding identifies in this section of her complaint.

Finally, Ms. Sieverding alleges that the Marshals conspired with a federal judge "to bypass the security provisions set by Congress to protect the rights of citizens."  Compl. ¶ 110.  She apparently contends that the Marshals colluded with a federal judge to bypass the WIN system.  See Compl. ¶¶ 109-12.  But Ms. Sieverding offers no factual allegations to support this vague claim of collusion, nor any legal basis to support her cause of action.  Hence, the Court dismisses her allegation.  See Iqbal, 129 S. Ct. at 1949-50.

---

[14] The Court will also dismiss Ms. Sieverding's claim that "[t]he Marshals had no authority under [18 U.S.C. § 3050] to arrest [her]."  Compl. ¶ 152.  18 U.S.C. § 3050 concerns the arrest power of Bureau of Prisons employees, not the Marshals.

C.      Allegations against DOJ

Ms. Sieverding contends that DOJ was required to meet with her and investigate (if not prosecute) her various allegations of criminal behavior. She argues that the Justice for All Act of 2004 "gives [her] the right to discuss [her] allegations of criminal acts and [DOJ's] decisions to prosecute or not prosecute with a U.S. Attorney." Compl. ¶ 161; see also Am. Compl. ¶ 22. Indeed, the Justice for All Act grants crime victims "[t]he reasonable right to confer with the attorney for the Government in the [crime victim's] case." 18 U.S.C. § 3771(a)(5). But even assuming that Ms. Sieverding may assert this "right to confer" in a civil case largely unrelated to her allegations of criminal behavior, the Act permits individuals to claim such rights only through a motion, see 18 U.S.C. § 3771(d)(3), and Ms. Sieverding has not made any such motion.

Ms. Sieverding also alleges that the Justice for All Act and the Mandatory Victim's Restitution Act require DOJ to "subpoena the parties whom [she] allege[s] committed federal crimes that injured [her]." Compl. ¶ 206. Similarly, she contends that DOJ had "a specific statutory mandate to investigate [alleged] crimes and they chose not to." Compl. ¶ 202; see also Compl. ¶¶ 200-01. The government's "decision to allocate limited governmental resources to investigate a reported crime," however, "is a discretionary function." Martinez v. United States, 587 F. Supp. 2d 245, 248-49 (D.D.C. 2008); see also Justice for All Act, 18 U.S.C. § 3771(d)(6) ("Nothing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction."). DOJ thus had no obligation to pursue Ms. Sieverding's allegations of criminal behavior, and she cannot state a claim for relief based on her allegations of a failure to subpoena or investigate.

Ms. Sieverding next complains that DOJ failed to offer her "reentry services even though[] the programs are supposed to be offered to all released prisoners." Compl. ¶ 141; see also Compl. ¶¶ 140, 143, 166. There is no statutory requirement for DOJ to offer Ms. Sieverding any "reentry services" programs upon her release from custody, however, and she identifies none.

Ms. Sieverding also alleges that no DOJ representative was present at several court hearings in 2005 and 2006 that led to her being detained in federal custody. See Compl. ¶ 166. Thus, she says, "[b]y its silence, DOJ illegally allowed non-DOJ lawyers to conduct litigation involving the U.S. government without the participation of DOJ lawyers." Compl. ¶ 171; see also Compl. ¶¶ 167-70. She apparently relies on 28 U.S.C. § 516, which generally reserves "to officers of the Department of Justice" "the conduct of litigation in which the United States . . . is interested." See Compl. ¶ 168 (citing 28 U.S.C. § 516). But while a violation of § 516 may provide a defense to an allegedly improper proceeding, see, e.g., Mehle v. Am. Mgmt. Sys., 172 F. Supp. 2d 203, 205-06 (D.D.C. 2001), no court has ever found a civil cause of action against DOJ for alleged violations of this statute. Rather, the time and place for Ms. Sieverding to raise this claim was at the allegedly improper hearings themselves.[15]

D.    Allegations against non-defendants

Lastly, Ms. Sieverding asserts a number of non-Privacy Act allegations against individuals and entities that are not defendants to this action. See Compl. ¶¶ 23, 29, 42, 48, 61-

---

[15] Ms. Sieverding also alleges that various federal employees or agents have violated her constitutional rights. See Compl. ¶¶ 14-15, 33, 39, 48, 56-58, 74, 78-81, 89, 106, 117-18, 126, 151-54; Am. Compl. ¶ 24. She cannot, however, sustain such claims against the Department of Justice or any other federal agency. See Drake v. Fed. Aviation Admin., 291 F.3d 59, 72 (D.C. Cir. 2002) ("It is of course well-settled that Bivens liability cannot be imposed on an agency of the Federal Government.") (citing Fed. Deposit Ins. Co. v. Meyer, 510 U.S. 471, 484-86 (1994)).

62, 103-05, 144, 191.  The Court lacks jurisdiction over these non-defendants, and will dismiss all allegations against them.[16]

## III.    Pending Motions

Although the Court will grant in full defendant's motion to dismiss or in the alternative for summary judgment, there remain over a dozen pending motions filed by the Sieverdings. These motions fall into three categories.  Some simply seek to substitute or withdraw memoranda.  See, e.g., [Docket Entries 16, 53].  The Court will grant all such motions.  Others seek to strike filings by the Department of Justice.  See, e.g., [Docket Entries 23, 31, 32].  The Court will deny those.  The Sieverdings' remaining motions, which are accompanied by over a thousand pages of disorganized, largely irrelevant exhibits, generally repeat the arguments made in the complaint and amended complaint, or levy new allegations that are entirely absent from the complaints.  See, e.g., [Docket Entries 36, 39, 41, 45, 52].  The Court will deny all these motions as well.  The Court will also deny as moot the Department's motion for a protective order imposing filing restrictions on the Sieverdings.[17]

## CONCLUSION

For the foregoing reasons, the Court will grant the Department's motion to dismiss or in the alternative for summary judgment.  A separate order accompanies this Memorandum

---

[16] To the extent Ms. Sieverding alleges violations of state law, see, e.g., Compl. ¶ 123 (defamation); Am. Compl. ¶ 24, the Court declines to exercise its supplemental jurisdiction. See 28 U.S.C. § 1367(c)(3) ("district courts may decline to exercise supplemental jurisdiction" where "the district court has dismissed all claims over which it has original jurisdiction").

[17] The Sieverdings are advised that this is the final decision of the Court.  Hence, they may appeal it.  The Court discourages the Sieverdings from filing additional irrelevant documents in this Court, as the Court retains its inherent power to issue sanctions for vexatious litigation conduct, should that become necessary.  See Sieverding II, 466 F. Supp. 2d at 229 n.4.

Opinion.


_____ /s/ _____
JOHN D. BATES
United States District Judge


Dated: March 15, 2010